# IN THE UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF TEXAS

## DALLAS DIVISION

**IN RE:**

| | |
|---|---|
| **Courtney Michelle Linton** **xxx-xx-9549** 2103 Long Forest Rd. Heartland, TX 75126 | Case No.:      25-34175-swe13 |
| Debtor | Chapter:       13 |
| **Doug Witt** Movant, | |
| v. | |
| **Courtney Michelle Linton, Debtor; and** **Thomas Powers, Trustee** | |
| Respondents | |

**DOUG WITT'S IN REM MOTION FOR RELIEF FROM STAY OF ACTION AGAINST PROPERTY PURSUANT TO 11 U.S.C. § 362 AS TO COURTNEY MICHELLE LINTON, WAIVER OF THIRTY DAY REQUIREMENT PURSUANT TO § 362(e), AND REQUEST FOR HEARING IN DALLAS, TEXAS**

**[Re: Real Property located at 2103 Long Forest Rd., Heartland, TX 75126]**

---

## <u>NOTICE</u>

**PURSUANT TO LOCAL BANKRUPTCY RULE 4001-1(b), A RESPONSE IS REQUIRED TO THIS MOTION OR THE ALLEGATIONS IN THE MOTION MAY BE DEEMED ADMITTED, AND AN ORDER GRANTING THE RELIEF SOUGHT MAY BE ENTERED BY DEFAULT.**

**ANY RESPONSE SHALL BE IN WRITING AND FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT FOR THE ABOVE-REFERENCED COURT**

**DIVISION. THE RESPONSE SHALL BE FILED BEFORE THE CLOSE OF BUSINESS AT LEAST 14 DAYS FROM THE DATE THIS MOTION IS SERVED. A COPY OF THE RESPONSE SHALL BE SERVED UPON COUNSEL FOR THE MOVING PARTY AND ANY TRUSTEE OR EXAMINER APPOINTED IN THE CASE. ANY RESPONSE SHALL INCLUDE A DETAILED AND COMPREHENSIVE STATEMENT AS TO HOW THE MOVANT CAN BE "ADEQUATELY PROTECTED" IF THE AUTOMATIC STAY IS TO BE CONTINUED.**

TO THE HONORABLE UNITED STATES BANKRUPTCY COURT:

**COMES NOW DOUG WITT** (hereinafter "Movant") by and through the undersigned attorney, who files this Motion seeking in rem relief from  the automatic and/or Co-Debtor stays herein, and in

support thereof would respectfully show the Court as follows:

## I.     <u>JURISDICTION</u>

1.  This Motion is brought pursuant to 11 U.S.C. § 362 and in accordance with Rule 9014 of the Federal Rules of Bankruptcy Procedure.

2.  The Court has jurisdiction herein by virtue of 11 USC §105, 361 and 362, and 28 USC §§ 1334 and 157.

## II.     <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

3.  On March 1, 2025, the Debtor, Courtney Michelle Linton, entered into a residential lease agreement with the Movant for a property located at 2103 Long Forest Rd. Heartland, TX 75126 (herein "Subject Property").   Said lease agreement included a term that was scheduled to terminate on March 31, 2025 unless the Parties elected to exercise the lease agreement's month-to-month provisions.   A true and correct copy of the Parties' lease agreement is attached as **Exhibit "A"** to this Motion.

4.   In June 1, 2025, the Debtor failed to make their monthly rent payment.  The Debtor has since made no payments towards the resulting and subsequent rent arrearages.  Upon information and belief, the Movant alleges the Debtor remains in possession of the subject property.  As of the date of this filing, the Debtor has accrued a balance of $11,000 in unpaid rent.  A true and correct copy of Doug Witt's payment ledger for the Debtor is attached as **Exhibit "B**."

5.   On August 20, 2025, the Debtor filed a voluntary petition for an order of relief under Chapter 13 of the United States Bankruptcy Code with case number 25-33152-sgj13. The Trustee of the said case filed a Notice to Dismiss for the reason that the Debtor did not pay to the Trustee the first payment specified in Debtor's Final Plan and Motion for Valuation within 30 days of the petition date. This court, through Honorable Judge Stacey G Jernigan, signed an order on October 10, 2025, dismissing the case. Attached as **Exhibit "C"** is a true and correct copy of the signed order dismissing the Chapter 13 petition.

6.   Movant had previously initiated a forcible detainer cause of action against the Debtor on August 4, 2025, with case number EV-25-111*4 at Kaufman County, Justice of the Peace, Precinct 4. Said court entered a judgment in favor of movant on August 20, 2025. The Debtor then filed the first Chapter 13 petition on the same day. When Justice of the Peace acquired its jurisdiction back because of the dismissal of the first Chapter 13 petition, the Debtor then appealed the eviction case and on the same day, filed this second Chapter 13 petition. Justice of the Peace Court handling this forcible detainer abated the eviction matter for the second time.

### III.    <u>RELIEF REQUESTED</u>

### A.  MOVANT IS ENTITLED TO RELIEF FROM THE AUTOMATIC STAY

1. This motion requests an Order from the Bankruptcy Court authorizing Movant to obtain possession of the Property that is identified in paragraph 3.  This motion also requests an Order granting the Movant's in rem relief, as this is the Debtor's second bankruptcy filing, and she is "daisy-chaining" bankruptcy filings for the purpose of abusing this Court's automatic stay powers.

2. The Subject Property described in paragraph 3 is not exempt property.

3. Pursuant to 11 U.S.C. §362(d)(1), cause exists to lift the automatic stay because Movant lacks adequate protection of her interest in the Subject Property.  The Debtor has failed to make any post-petition rent payments and, accordingly, Movant is entitled to possession of the Subject Property.

4. Because of the Debtor's failure to tender any rent payments following the initial filing for relief, good cause exists for the Court to waive any 30-day requirements under 11 U.S.C. §365(e).

5. Pursuant to 11 U.S.C. §1301(c)(1), the Court should grant Doug Witt's request that the Debtor's stay be lifted because the Debtor has received and continues to receive consideration under her lease with Doug Witt by maintaining uncompensated possession of the Subject Property.  Doug Witt's claims under this motion directly relate to his ownership interest in the Subject Property.  In addition, Doug Witt's ownership interest will be irreparably harmed by the Debtor's stay as the stay will enable the Debtor's continued, uncompensated possession of the Subject Property. *Id*. at §1301(c)(3).  Pursuant to 11 U.S.C. §1301(c)(1) and (3), the Court shall grant relief from the Debtor's stay upon a Creditor's showing that either of these tests is met.  11 U.S.C. §1301(c)(1)-(3).

6.  The Debtor has no equity in the Subject Property, and the Subject Property is not necessary for an effective reorganization of the Debtor's estate.

7.  Because of the Debtor's failure to tender any rent payments following the initiation of the Debtor's filing for relief, good cause exists for the Court to waive any 30 day requirements under 11 U.S.C. §365(e).

8.  The provisions of Bankruptcy Rule 4001(a)(3) should be waived, and Movant should be permitted to immediately enforce and implement an order granting relief from the automatic stay herein.

## B.  MOVANT IS ENTITLED TO IN REM RELIEF PURSUANT TO 11 U.S.C. §362(d)(4)

1.  Section 362(d)(4) provides, in pertinent part:

   (d)      On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –

      (4) with respect to a stay of an act against property under subsection (a) by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved either –

         (B)      multiple bankruptcy filings affecting such real property.

When the facts clearly establish the Debtor is attempting to unreasonably deter and harass the creditors' bona fide efforts to realize upon their securities, good faith does not exist. *In re Thirteenth Place, Inc.*, 30 B.R. 503, 505 (9th Cir. B.A.P. 1983).   In the absence of extraordinary circumstances, successive or serial filings for the purposes of reimposing the automatic stay, particularly when the Debtor's purpose is to delay a scheduled foreclosure, should not be viewed with favor by the court.  *In re McKissey*, 103 B.R. 189, 192 (Bankr. N.D. IL 1989)(citing *In re Russo*, 94 B.R. 127, 129 (Bankr. N.D. IL 1988).   Here, the

Debtor's act of defrauding the Movant by moving into the Movant's rental property and subsequently failing to make their rent payment, coupled with two back-to-back bankruptcy filings, demonstrates her lack of good faith. Movant purchased the Subject Property at a foreclosure auction.  Upon information and belief, Movant asserts the Debtor is related to the prior owner and intentionally withheld this fact from the Movant. After her first Chapter 13 matter was dismissed, the Debtor served notice of a second bankruptcy filing to the eviction court.  The Debtor' filing of two back-to-back Chapter 13 matters, absent any attempt to tender rent payments to the Movant further demonstrates her bad faith.  Given these several acts and omissions, the Court cannot reasonably infer any good faith on the part of these Debtor with respect to the Movant or the Subject Property.  This present bankruptcy cause of action and  the  Debtor's  prior chapter 13 filing coupled with the Debtors's sleight-of-hand acquisition of the Subject Property clearly shows the automatic stay in this matter is part of a scheme to defraud the Movant.

## IV.   PRAYER

For these reasons, Movant prays that, upon considering this Motion, the automatic stay be terminated as to the Debtor with respect to the Movant, thereby permitting Movant to pursue all available remedies to obtain possession and control of the Property to the exclusion of the Debtor.  Movant further prays the Court sign an Order granting their request for in rem relief as to the Subject Property.  Movant prays for all other relief to which it is entitled.

Respectfully submitted,

   /s/ L. Marc Girling_____
**Girling Law, PLLC**
L. Marc Girling
SBN 24074283
marc.girling@gmail.com
service.girling@gmail.com
6833 Coit Rd.

Suite 107
Plano, TX 75024
Telephone: (972) 662-8870
service.girling@gmail.com
**ATTORNEY FOR MOVANT**

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that true and correct copies of the foregoing pleading and all attachments were served upon all parties listed below in accordance with applicable rules of bankruptcy procedure on November 1, 2025. Where possible, service was made electronically via the Court's ECF noticing system. Where such electronic service was not possible, service was made via certified and regular first-class mail.

| |
|---|

### COUNSEL FOR THE DEBTOR

Christopher Marvin Lee
Reaves & Lee, PLLC
8701 W. Bedford Euless Road
Suite 510
Hurst, TX, 76053
469-646-8995
469-694-1059 (fax)
Email: ecf@leebankruptcy.com

### TRUSTEE

Thomas Powers
Chapter 13 Trustee
5601 Executive Dr.,
Suite 300
Irving, TX 75038
**Trustee, ECF**

Office of the United States Trustee
1100 Commerce St.
Room 976
Dallas, TX 75242
**United States Trustee, ECF**

Respectfully submitted,
__/s/ L. Marc Girling_____
L. Marc Girling

**ATTORNEY FOR MOVANT**

**Exhibit "A"**

# TEXAS STANDARD RESIDENTIAL LEASE

THIS STANDARD RESIDENTIAL LEASE AGREEMENT (this "Lease" or "lease") is entered into between ___DOUG WITT_____ ("Landlord") and ___COURTNEY LINTON_____ ("Tenant", whether singly or collectively).

1. **PREMISES:** For good consideration, Landlord leases to Tenant the following real property:
Address: __2103 LONG FOREST RD, HEARTLAND, TX 75126__

legally described as: __LOT 21, BLOCK 11, HEARTLAND PARCEL 5__
in __KAUFMAN_____ County, Texas, together with the following non-real-property items:

The real property and the non-real property are collectively called the "Premises".

2. **TERM:**

   A. <u>Lease Term:</u> The initial term of this lease begins on __MARCH 1, 2025__ and ends at Midnight on __MARCH 31, 2025__.

   B. <u>Delay of Occupancy</u>: Tenant may terminate this Lease by giving written notice to Landlord if the Premises are not available to be occupied by Tenant by the fifth (5th) day after the Commencement Date because of construction on the Premises or a prior tenant's holding over of the Premises, in which event Landlord will refund to Tenant the security deposit and any rent paid. Landlord will abate rent on a daily basis for a delay caused by construction or a prior tenant's holding over. This paragraph does not apply to any delay in occupancy caused by cleaning, repairs, or make-ready items.

3. **DEFINITIONS:**

   "Abandonment" occurs when all of the following occur:

   (a) all occupants have vacated the Premises, in Landlord's reasonable judgment;

   (b) Tenant is in breach of this lease by not timely paying rent; and

   (c) Landlord has delivered written notice to Tenant, by affixing it to the inside of the main entry door or, if Landlord is prevented from entering the Premises, by affixing it to the outside of the main entry door, stating that Landlord considers the Premises abandoned, and Tenant fails to respond to the affixed notice by the time required in the notice, which will not be less than 2 days from the date the notice is affixed to the main entry door.

   "Injury" means (a) harm to or impairment or loss of property or its use or (b) harm to or death of a person.

   "Landlord" means Landlord[s] and [his/her/their/its] agents, employees, invitees, licensees, or visitors.

   "Normal wear and tear" means deterioration that occurs without negligence, carelessness, accident, or abuse.

   "Rent" means Monthly Rent plus any other amounts of money payable by Tenant to Landlord.

   "Surrender" occurs when all occupants have vacated the Premises, in Landlord's reasonable judgment, and one of the following events occurs: the date Tenant specifies as the move-out or termination date in a written notice to Landlord has passed; or\

(a) Tenant returns keys and access devices that Landlord provided to Tenant under this lease.

"Tenant" means Tenant[s] and [his/her/their] contractors, invitees, or visitors.

**4. AUTOMATIC RENEWAL AND NOTICE OF TERMINATION:**

A. This lease automatically renews on a month-to-month basis unless Landlord or Tenant provides the other party <u>written</u> notice of termination not less than: (Check only one box.)

☒ (1) 30 days before the Expiration Date.

☐ (2) _____ days before the Expiration Date.

B. In the event this Lease is renewed pursuant to Paragraph 4A above, it will continue to renew on a month-to-month basis until either party provides <u>written</u> notice of termination to the other party and the notice of termination will be effective: (Check only one box.)

☐ (1) on the last day of the month following the month in which the notice is given. Landlord is not obligated to prorate rent even if Tenant surrenders the Premises before the termination date.

☒ (2) on the date designated in the notice but not sooner than 30 days after the notice is given and, if necessary, rent will be prorated on a daily basis.

Landlord may increase the rent that will be paid during any month-to-month renewal period by providing at least 30 days written notice to Tenant.

C. <u>Oral notice of termination is not sufficient under any circumstances.</u> Strict compliance is required and time is of the essence relative to the expiration and renewal of this Lease. If a box is not checked under Paragraph 4A, Paragraph 4A(1) will apply. If a box is not checked under Paragraph 4B, Paragraph 4B(1) will apply.

**5. RENT:**

A. <u>Monthly Rent:</u> During the Lease, including any renewals, Tenant will pay Landlord monthly rent in the amount of $ 2,200.00 for each full month, payable in advance on the first day of each month. Weekends, holidays, and mail delays do not excuse Tenant's obligation to timely pay rent.

B. <u>Prorated Rent:</u> On or before _____NA_____, Tenant will pay Landlord $_____—_____ as prorated rent from the Commencement Date through the last day of the month in which this Lease begins. In the event the term of this Lease expires other than on the last day of a calendar month, the monthly rent for such month shall be subject to daily proration and shall only be owing for the days of such month during which Tenant or the Tenant's property occupied the Premises.

C. <u>Place of Payment:</u> Tenant will pay all amounts due to Landlord under this Lease to the following and make all payments payable to the named person or entity. Landlord may later designate, in writing, another person or place to which Tenant must remit amounts due under this Lease.

Name: DOUG WITT
Address: 6224 MEMORIAL DR, FRISCO, TX 75034

**To ensure proper credit, place the Premises address and Tenant's name on all payments.**

Tenant _____   Landlord _____   Page 2 of 16

CJM 186253v.6

**D.** Method of Payment:

   (1) Tenant must pay all rent timely and without demand, deduction, or offset, except as permitted by law or this Lease.

   (2) Time is of the essence for the payment of rent (strict compliance with rental due dates is required). Unless the parties agree otherwise, Tenant may not pay rent in cash and will pay all rent by check, cashier's check, money order, or other means acceptable to Landlord.

   *DW*
   *CL*

   (3) Should Tenant fail to timely pay any amounts due under this Lease or if any check of Tenant's is not honored by the institution on which it was drawn, Landlord may require Tenant to pay such amount and any subsequent amounts under this Lease in certified funds. This paragraph does not limit Landlord from seeking other remedies under this Lease for Tenant's failure to make timely payments with good funds.

**6.    LATE CHARGES:**

**A.** If Landlord does not <u>actually receive</u> a rent payment in the full amount at the designated place of payment by 11:59 p.m. on the ~~FIFTH~~ *Fifteenth* (~~5th~~ *15th*) day *CL DW* <u>after</u> the date on which it is due according to Paragraph 4A, Tenant will pay Landlord for each late payment:

   (1) an initial late charge equal to (check one box only): ☒ (a) $ _100.00_ ; or ☐ (b) _____% of one month's rent; and

   (2) additional late charges of $ _50.00_ per day thereafter until rent and late charges are paid in full. Additional late charges for any one payment may not exceed more than 30 days.

**B.** For the purposes of paying rent and any late charges, the postmark date is not the date Landlord receives the payment. The parties agree that the late charge is based on a reasonable estimate of uncertain damages to the Landlord that are incapable of precise calculation and result from late payment of rent. Landlord's acceptance of a late charge does not waive Landlord's right to exercise remedies under Paragraph 25.

**C.** <u>Returned Checks:</u> Tenant will pay Landlord $ _NA_ for each check Tenant tenders to Landlord which is returned or not honored by the institution on which it is drawn for any reason, <u>plus any late charges until Landlord receives payment.</u> Tenant must make any returned check good by paying such amount(s) plus any associated charges in certified funds.

**D.** <u>Application of Funds:</u> Regardless of any notation on a check, Landlord may apply funds received from Tenant first to any non-rent obligations of Tenant, including, but not limited to, late charges, returned check charges, repairs, brokerage fees, periodic utilities, pet charges, and then to rent.

**7.    PETS:**

**A.** Unless the parties agree otherwise in writing, <u>Tenant may not permit, even temporarily, any pet on the Premises</u> (including but not limited to any mammal, reptile, bird, fish, rodent, or insect). If Landlord allows a pet, Tenant must execute a separate pet addendum and pay a pet deposit.

**B.** If Tenant or any guest of Tenant violates this Paragraph 7 or any agreement to keep a pet on the Premises, Landlord may take all or any of the following actions:

   (1) declare Tenant to be in default of this Lease and exercise Landlord's remedies under Paragraph 25, charge Tenant, as additional rent, an initial amount of $_____ and $_____ per day

Tenant _____ ____ ___ ___        Landlord _DW_ ____        Page 3 of 16
CJM 186253v.6

thereafter per pet for each day Tenant violates the pet restrictions;

(2) remove or cause to be removed any unauthorized pet and deliver it to appropriate local authorities by providing at least 24-hour written notice to Tenant of Landlord's intention to remove the unauthorized pet; and

(3) charge to Tenant the Landlord's cost to:

    (a) remove any unauthorized pet;
    (b) exterminate the Premises for fleas and other insects;
    (c) clean and deodorize the Premises' carpets and drapes; and
    (d) repair any damage to the Premises caused by the unauthorized pet.

C. When taking any action under Paragraph 7B, Landlord will not be liable for any harm, injury, death, or sickness to any pet.

## 8.   SECURITY DEPOSIT:

A. <u>Security Deposit</u>: On or before execution of this Lease, Tenant will pay a security deposit to Landlord in the amount of $ __0.00__ . "Security deposit" has the meaning assigned to that term in §92.102 of the Texas Property Code.

B. <u>Interest</u>: No interest or income will be paid to Tenant on the security deposit. Landlord may place the security deposit in an interest-bearing or income-producing account and any interest or income earned will be paid to Landlord or Landlord's representative.

C. <u>Refund:</u> <u>Tenant must give Landlord at least thirty (30) days written notice of surrender before Landlord is obligated to refund or account for the security deposit.</u>

**Notices about Security Deposits:**

**(1) §92.108, Property Code provides that a tenant may not withhold payment of any portion of the last month's rent on grounds that the security deposit is security for unpaid rent.**

**(2) Bad faith violations of §92.108 may subject a tenant to liability up to 3 times the rent wrongfully withheld and the landlord's reasonable attorney's fees.**

**(3) The Property Code does not obligate a landlord to return or account for the security deposit until the tenant surrenders the Premises and gives the landlord a written statement of the tenant's forwarding address, after which the landlord has 30 days in which to account.**

D. <u>Deductions</u>:

(1) Landlord may deduct reasonable charges from the security deposit for:

    (a)  damages to the Premises, except normal wear and tear, and all reasonable costs related to repair the Premises;

    (b)  costs for which Tenant is responsible to clean, deodorize, exterminate, and maintain  the Premises;

    (c)  unpaid or accelerated rent;

Tenant _____ ___ ___      Landlord _____      Page 4 of 16

CJM 186253v.6

(d)  unpaid late charges;

(e)  unpaid utilities and utility expenses;

(f)  unpaid pet charges;

(g)  replacing unreturned keys, garage door openers, security devices, or other components;

(h)  removal of unauthorized locks or fixtures;

(i)  Landlord's cost to access the Premises if made inaccessible by Tenant;

(j)  missing or burned-out light bulbs and fluorescent tubes;

(k)  packing, removing, and storing abandoned property;

(l)  removing abandoned or illegally parked vehicles;

(m)  costs of re-letting, if Tenant is in default;

(n)  attorney's fees, costs of court, costs of service, and other reasonable costs incurred in any legal proceeding against Tenant;

(o)  mailing costs associated with sending notices to Tenant for any violations of this Lease; and

(p)  any other unpaid charges or fees or other items for which Tenant is responsible under this Lease.

(2) If deductions exceed the security deposit, Tenant will pay to Landlord the excess within 10 days after Landlord makes written demand.

**9.  UTILITIES:**

A.  Tenant will pay all connection fees, service fees, usage fees, and all other costs and fees for all utilities to the Premises (for example, electricity, gas, water, wastewater, garbage, telephone, alarm monitoring systems, cable, and Internet connections) except the following, which Landlord will pay ___*NA*___ _____: Unless otherwise agreed, amounts under this paragraph are payable directly to the service providers.

B.  Unless provided by Landlord, Tenant must, at a minimum, keep the following utilities on, if available, at all times this Lease is in effect: gas; electricity; water; wastewater; and garbage services. **Notice: Before signing this lease, Tenant should determine if all necessary utilities are available to the Premises and are adequate for Tenant's use.**

**10.  USE AND OCCUPANCY:**

A.  <u>Occupants</u>:  The Premises may be used as a private residence only. The only persons Tenant may permit to reside on the Premises during the Term of this Lease are (include names and ages of all occupants): _____

_____

B.  <u>Phone Numbers</u>: Tenant must promptly inform Landlord of any changes in Tenant's phone numbers (home, work, and mobile) not later than 5 days after a change.

Tenant _____  ___  ___  Landlord _____                    Page 5 of 16

CJM 186253v.6

C. **HOA Rules:** Tenant must comply with any owners' association rules or restrictive covenants affecting the Premises, if any. Tenant will reimburse Landlord for any fines or other charges assessed against Landlord for violations by Tenant of any owners' association rule or restrictive covenant.

D. **Prohibitions:** Unless otherwise authorized by this Lease, Tenant may not install or permit any of the following on the Premises, even temporarily: a spa, hot tub, above-ground pool, trampoline, or any item which causes a suspension or cancellation of insurance coverage or an increase in insurance premiums. Tenant may not permit any part of the Premises to be used for: (1) any activity which is a nuisance, offensive, noisy, or dangerous; (2) the repair of any vehicle; (3) any business of any type, including, but not limited to, child care; (4) any activity which violates any zoning ordinance, owners' association rule, or restrictive covenant; (5) any illegal or unlawful activity; or (6) activity that obstructs, interferes with, or infringes on the rights of other persons near the Premises.

E. **Guests:** Tenant may not permit any guest to stay on the Premises longer than the amount of time permitted by any owners' association rule or restrictive covenant or _____ days without Landlord's written permission, whichever is less.

F. **Common Areas:** Landlord is not obligated to pay any user fees for Tenant's use of any common areas or facilities (for example, pool or tennis courts).

11. **PARKING RULES:** Tenant may not permit more than _____ vehicles, including but not limited to automobiles, trucks, recreational vehicles, trailers, motorcycles, all-terrain vehicles, jet skis, and boats, on the Premises unless authorized by Landlord in writing. Tenant may not park or permit any person to park any vehicles in the yard. Tenant may permit vehicles to be parked only in drives, garages, designated common parking areas, or in the street if not prohibited by law or an owners' association. Tenant may not store or permit any person to store any vehicles on or adjacent to the Premises or on the street in front of the Premises. In accordance with applicable state and local laws, Landlord may have towed, at Tenant's expense: (a) any inoperative vehicle on or adjacent to the Premises; (b) any vehicle parked in violation of this paragraph or any additional parking rules made part of this Lease; or (c) any vehicle parked in violation of any law, local ordinance, or owners' association rule.

12. **ACCESS BY LANDLORD:**

A. **Advertising:** Landlord may prominently display a "For Sale" or "For Lease" or similarly worded sign on the Premises during the term of this Lease or any renewal period. Landlord or Landlord's contractor may take interior or exterior photographs or images of the Premises and use the photographs or images in any advertisements to lease or sell the Premises.

B. **Access:** Landlord or Landlord's representatives shall have the right to enter the Premises after reasonable attempt to contact Tenant and at reasonable times in order to: (1) survey or review the condition of the Premises and take photographs to document the condition; (2) show the Premises to prospective tenants or buyers, inspectors, fire marshals, lenders, appraisers, or insurance agents; and/or (3) leave written notices. However, Landlord or Landlord's representatives may enter the Premises at reasonable times without notice to: (1) make repairs including emergency repairs; (2) exercise a contractual or statutory lien; and/or (3) seize non-exempt property if Tenant is in default under this Lease.

C. **Trip Charges:** If Landlord or Landlord's representatives have made prior arrangements with Tenant to access the Premises and are denied or are not able to access the Premises because of Tenant's failure to make the Premises accessible, Landlord may charge Tenant a trip charge of $_____.

D. **Keybox:** A keybox is a locked container placed on the Premises holding a key to the Premises.

Tenant _____ ___ ___ ___     Landlord _____     Page 6 of 16
CJM 186253v.6

**The keybox is opened by a special combination, key, or programmed access device so that persons with the access device may enter the Premises, even in Tenant's absence. The keybox is a convenience but involves risk (such as unauthorized entry, theft, property damage, or personal injury).**

(1) Tenant authorizes Landlord and Landlord's representative to place on the Premises a keybox containing a key to the Premises:

(a) during the last ___30___ days of this lease or any renewal or extension; and

(b) at any time Landlord lists the Premises for sale with a Texas licensed Texas broker.

(2) Tenant may withdraw Tenant's authorization to place a keybox on the Premises by providing written notice to Landlord and paying Landlord a fee of $____-____ as consideration for the withdrawal. Removal of the keybox does not change Tenant's obligation to make the Premises available for showings as indicated in Paragraph 12B.

(3) Neither Landlord nor Landlord's representatives are responsible to Tenant, Tenant's guests, family, or occupants for any damages, injuries, or losses arising from use of the keybox unless caused by Landlord or Landlord's representatives

13. **CONDITION OF THE PREMISES:**

A. Landlord makes no express or implied warranties as to the condition of the Premises, including, but not limited to, warranties of merchantability or fitness for a particular purpose. Tenant has inspected the Premises and accepts it **AS-IS** provided that Landlord: __NA__

B. Tenant will complete an Inventory and Condition Form, noting any damages to the Premises, and deliver it to Landlord within __NA__ days after the Commencement Date. If Tenant fails to timely deliver the Inventory and Condition Form, the Premises will be deemed to be free of damages, and in clean, safe and good working condition. The Inventory and Condition Form is not a request for repairs. Tenant must direct all requests for repairs in compliance with Paragraph 15.

C. Tenant's General Responsibilities: Tenant, at Tenant's expense, must:

(1) keep the Premises clean and sanitary;

(2) promptly dispose of all garbage in appropriate receptacles;

(3) supply and change heating and air conditioning filters at least once a month;

(4) supply and replace all light bulbs, fluorescent tubes, and batteries for smoke detectors, carbon monoxide detectors, garage door openers, ceiling fan remotes, and other devices (of the same type and quality that are in the Premises on the Commencement Date);

(5) maintain appropriate levels of necessary chemicals or matter in any water softener;

(6) take action to promptly eliminate any dangerous condition on the Premises;

(7) take all necessary precautions to prevent broken water pipes due to freezing or other causes;

(8) replace any lost or misplaced keys;

Tenant _CLC_

CJM 186253v.6                                   Landlord _DW_

(9)   pay any periodic, preventive, or additional extermination costs desired by Tenant;

(10)  remove any standing water;

(11)  know the location and operation of the main water cut-off valve and all electric breakers and how to switch the valve or breakers off at appropriate times to mitigate any potential damage; and

(12)  promptly notify Landlord, in writing, of all needed repairs.

D.  **Yard Maintenance**:

(1)  "Yard" means all lawns, shrubbery, bushes, flowers, gardens, trees, rock or other landscaping, and other foliage on or encroaching on the Premises or on any easement appurtenant to the Premises, and does not include common areas maintained by an owners' association.

(2)  "Maintain the yard" means to perform activities such as, but not limited to: (a) mowing, fertilizing, and trimming the yard; (b) controlling pests in the yard; and (c) removing debris from the yard.

(3)  Unless prohibited by ordinance or other law, Tenant will water the yard at reasonable and appropriate times, including, but not limited to, the following times: _PER HOA GUIDELINES_
Other than watering, the yard will be maintained as follows:

☐  (a) Landlord, at Landlord's expense, will maintain the yard.  Tenant will permit Landlord and Landlord's contractors reasonable access to the yard and will remove any pet from the yard at appropriate times.

☒  (b) Tenant, at Tenant's expense, will maintain the yard.

☐  (c) Tenant will maintain in effect a scheduled yard maintenance contract with: ☐ a contractor who regularly provides such service; or ☐_____.

E.  **Pool/Spa Maintenance**: Any pool or spa on the Premises will be maintained according to a Pool/Spa Maintenance Addendum.

F.  **Prohibitions**: If Tenant installs any fixtures on the Premises, authorized or unauthorized, such as additional smoke detectors, locks, alarm systems, cables, satellite dishes, or other fixtures, such fixtures will become the property of Landlord.  Except as otherwise permitted by law, this Lease, or in writing by Landlord, Tenant may not:

(1)   remove any part of the Premises or any of Landlord's personal property from the Premises;

(2)   remove, change, add, or rekey any lock;

(3)   make holes in the woodwork, floors, or walls, except that a reasonable number of small nails may be used to hang pictures in sheetrock and grooves in paneling;

(4)   permit any water furniture on the Premises;

(5)   install additional phone or video cables, outlets, antennas, satellite receivers, or alarm systems;

(6)   replace or remove flooring material, paint, or wallpaper;

Tenant __CL__ ____ ____ ____        Landlord __DW__
CJM 186253v.6

(7) install, change, or remove any: fixture, appliance, or non-real-property item listed in Paragraph 2;

(8) keep or permit any hazardous material on the Premises such as flammable or explosive materials;

(9) keep or permit any material or item which causes any liability or fire and extended insurance coverage to be suspended or canceled or any premiums to be increased;

(10) dispose of any environmentally detrimental substance (for example, motor oil or radiator fluid) on the Premises; or

(11) cause or allow any lien to be filed against any portion of the Premises.

E. **Failure to Maintain:** If Tenant fails to comply with this Paragraph 13 or any Pool/Spa Maintenance Addendum, Landlord may, in addition to exercising Landlord's remedies under Paragraph 25 perform whatever action Tenant is obligated to perform and Tenant must immediately reimburse Landlord the reasonable expenses that Landlord incurs.

14. **MOVE-OUT:**

A. **Move-Out Condition:** When the term of this Lease ends, Tenant will surrender the Premises in the same condition as when received, normal wear and tear excepted. Tenant will leave the Premises in a clean condition, free of all trash, debris, and any personal property. Tenant may not alter, damage or remove Landlord's property, including alarm systems, detection devices, telephone and cable tv wiring, screens, locks and security devices.

B. **Personal Property Left After Move-Out:**

(1) If Tenant leaves any personal property in the Premises after surrendering or abandoning the Premises, Landlord may:

(a) dispose of such personal property;

(b) give such personal property to a charitable organization; or

(c) store and sell such personal property by following procedures in §54.045(b)-(e), Property Code.

(2) Tenant must reimburse Landlord all Landlord's reasonable costs under Paragraph 14C(1) for packing, removing, storing, and selling the personal property left in the Premises after surrender or abandonment.

15. **REPAIRS:** (Subchapter B, Chapter 92, Property Code governs repair obligations).

A. **Repair Requests:** All requests for repairs must be in writing and delivered to Landlord. If Tenant is delinquent in rent at the time a repair notice is given, Landlord is generally not obligated to make the repair. In the event of an emergency related to the condition of the Premises that materially affects the physical health or safety of an ordinary tenant, call: 469-867-7546 .

Ordinarily, a repair to the heating and air conditioning system is not an emergency.

Tenant CJM 186253v.6 _____ — — —          Landlord DW

**B.** Completion of Repairs:

(1) Tenant may not repair or cause to be repaired any condition, regardless of the cause, without Landlord's permission. All decisions regarding repairs, including the completion of any repair, whether to repair or replace the item, and the selection of contractors, will be at Landlord's sole discretion.

(2) Unless required by the Property Code, Landlord is not obligated to complete a repair on a day other than a business day.

**C.** Payment of Repair Costs: Tenant will pay Landlord the first $ _100.00_ of the cost to repair each condition in need of repair, and Landlord will pay the remainder, except for the following conditions which will be paid as follows:

(1) Repairs that Landlord will Pay Entirely: Landlord will pay the entire cost to repair:

(a) a condition caused by Landlord or the negligence of Landlord;

(b) wastewater stoppages or backups caused by deterioration, breakage, roots, ground condition, faulty construction, or malfunctioning equipment;

(c) a condition that adversely affects the health or safety of an ordinary tenant which is not caused by Tenant, an occupant, a member of Tenant's family, or a guest or invitee of Tenant; and

(d) a condition in the following items which is not caused by Tenant or Tenant's negligence:

(1) heating and air conditioning systems;

(2) water heaters; or

(3) water penetration from structural defects.

(2) Repairs that Tenant will Pay Entirely: Tenant will pay Landlord the entire cost to repair:

(a) a condition caused by Tenant, an occupant, a member of Tenant's family, or a guest or invitee of Tenant (a failure to timely report an item in need of repair or the failure to properly maintain an item may cause damage for which Tenant may be responsible);

(b) damage from wastewater stoppages caused by foreign or improper objects in lines that exclusively service the Premises;

(c) damage to doors, windows, or screens; and

(d) damage from windows or doors left open.

(3) Appliances or items which will not be Repaired: Landlord does not warrant and will not repair or replace the following: _REFRIGERATOR, STOVE, MICROWAVE, SECURITY SYSTEM/ CLOGGED TOILET                                    CAMERAS_

**D.** Trip Charges: If a repair person is unable to access the Premises after making arrangements with Tenant to complete the repair, Tenant will pay any trip charge the repair person may charge, which amount may be different from the amount stated in Paragraph 12C.

E. **Advance Payments and Reimbursements**: Landlord may require advance payment of repairs or payments under this Paragraph 15 for which Tenant is responsible.

F. **NOTICE**: If this Lease or the Property Code requires Landlord to repair a condition that materially affects the physical health or safety of an ordinary tenant and Landlord fails to do so, Tenant may be entitled to the remedies under §92.056 and §92.0561 of the Property Code. If Tenant follows the procedures under those sections, the following remedies may be available to Tenant: (1) terminate the lease and obtain an appropriate refund under §92.056(f); (2) have the condition repaired or remedied according to §92.0561; (3) deduct from the rent the cost of the repair or remedy according to §92.0561; and (4) obtain judicial remedies according to §92.0563. Do not exercise these remedies without consulting an attorney or carefully reviewing the procedures under the applicable sections. The Property Code presumes that 7 days is a reasonable period of time for the Landlord to repair a condition unless there are circumstances which establish that a different period of time is appropriate (such as the severity and nature of the condition and the availability of materials, labor, and utilities. Failure to strictly follow the procedures in the applicable sections may cause Tenant to be in default of the Lease.

16. **SECURITY DEVICES AND EXTERIOR DOOR LOCKS:**

A. Subchapter D, Chapter 92, Property Code requires the Premises to be equipped with certain types of locks and security devices. Landlord has rekeyed the security devices since the last occupant vacated the Premises or will rekey the security devices within 7 days after Tenant moves in. "Security device" has the meaning assigned to that term in §92.151, Property Code.

B. All notices or requests by Tenant for rekeying, changing, installing, repairing, or replacing security devices must be in writing. Installation of additional security devices or additional rekeying or replacement of security devices desired by Tenant will be paid by Tenant in advance and may be installed only by contractors authorized by Landlord.

17. **SMOKE DETECTORS**: Subchapter F, Chapter 92, Property Code requires the Premises to be equipped with smoke detectors in certain locations. Requests for additional installation, inspection, or repair of smoke detectors must be in writing. Disconnecting or intentionally damaging a smoke detector or removing a battery without immediately replacing it with a working battery may subject Tenant to civil penalties and liability for damages and attorney fees under §92.2611, Property Code.

18. **INSURANCE**

A. Insurance. Tenant and Landlord will maintain the respective insurance coverages described in the attached Insurance Addendum.

B. Release of Claims/Subrogation. LANDLORD AND TENANT RELEASE EACH OTHER FROM ALL CLAIMS OR LIABILITIES FOR DAMAGE TO THE PREMISES OR DAMAGE TO OR LOSS OF PERSONAL PROPERTY WITHIN THE PREMISES THAT ARE COVERED BY THE RELEASING PARTY'S PROPERTY INSURANCE OR THAT WOULD HAVE BEEN COVERED BY THE REQUIRED INSURANCE IF THE PARTY FAILS TO MAINTAIN THE PROPERTY COVERAGES REQUIRED BY THIS LEASE. THE PARTY INCURRING THE DAMAGE OR LOSS WILL BE RESPONSIBLE FOR ANY DEDUCTIBLE OR SELF-INSURED RETENTION UNDER ITS PROPERTY INSURANCE. LANDLORD AND TENANT WILL NOTIFY THE ISSUING PROPERTY INSURANCE COMPANIES OF THE RELEASE SET FORTH IN THIS PARAGRAPH AND WILL HAVE THE PROPERTY INSURANCE POLICIES ENDORSED, IF NECESSARY, TO PREVENT INVALIDATION OF COVERAGE. THIS RELEASE WILL NOT APPLY IF IT INVALIDATES THE PROPERTY INSURANCE COVERAGE OF THE RELEASING PARTY. THE RELEASE IN THIS PARAGRAPH WILL APPLY EVEN IF THE DAMAGE OR LOSS IS CAUSED IN WHOLE OR IN PART BY THE

**ORDINARY NEGLIGENCE OR STRICT LIABILITY OF THE RELEASED PARTY BUT WILL NOT APPLY TO THE EXTENT THE DAMAGE OR LOSS IS CAUSED BY THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF THE RELEASED PARTY.**

**19.     LIMITATION OF LIABILITY, INDEMNIFICATION:**    Unless caused by Landlord, Landlord is not responsible to Tenant, Tenant's guests, family, or occupants for any damages, personal injuries, or losses to person or property caused by fire, flood, water leaks, ice, snow, hail, winds, explosion, smoke, interruption of utilities, theft, burglary, robbery, assault, vandalism, other persons, condition of the Premises, environmental contaminants (for example, carbon monoxide, asbestos, radon, lead-based paint, mold, fungus, etc.), or other occurrences or casualty losses.  Tenant will promptly reimburse Landlord for any loss, property damage, or cost of repairs or service to the Premises caused by Tenant, Tenant's guests, any occupants, or any pets.

**TENANT AGREES TO INDEMNIFY, DEFEND, AND HOLD LANDLORD HARMLESS FROM ANY INJURY (AND ANY RESULTING OR RELATED CLAIM, ACTION, LOSS, LIABILITY, OR REASONABLE EXPENSE, INCLUDING ATTORNEY'S FEES AND OTHER FEES AND COURT AND OTHER COSTS) OCCURRING IN ANY PORTION OF THE PREMISES.   THE INDEMNITY CONTAINED IN THIS PARAGRAPH (A) WILL SURVIVE THE END OF THE TERM AND (B) WILL APPLY EVEN IF AN INJURY IS CAUSED IN WHOLE OR IN PART BY THE ORDINARY NEGLIGENCE OR STRICT LIABILITY OF LANDLORD, BUT WILL NOT APPLY TO THE EXTENT AN INJURY IS CAUSED BY THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF LANDLORD**

**20.     HOLDOVER:**  If Tenant or any occupant, invitee or guest fails to vacate the Premises at the time this Lease ends, or the date contained in our Notice to Vacate, Tenant will pay Landlord rent for the holdover period and indemnify Landlord and prospective tenants for damages, including, but not limited to, lost rent, lodging expenses, costs of eviction, and attorneys' fees.  Rent for any holdover period will be three (3) times the monthly rent, calculated on a daily basis, and will be immediately due and payable daily without notice or demand.

**21.     RESIDENTIAL LANDLORD'S LIEN:**  Subchapter C, Chapter 54, Property Code governs the rights and obligations of the parties regarding Landlord's lien. Landlord will have a lien for unpaid rent against all of Tenant's non-exempt personal property that is in the Premises and may seize and sell or dispose of nonexempt property if Tenant fails to pay rent in accordance with the provisions of §54.045, Property Code.  Landlord may collect a charge for packing, removing, or storing property seized in addition to any other amounts Landlord is entitled to receive.

**22.     SUBORDINATION:**  This Lease and Tenant's leasehold interest are and will be subject, subordinate, and inferior to: (i) any lien or encumbrance now or later placed on the Premises by Landlord; (ii) all advances made under any such lien or encumbrance; (iii) the interest payable on any such lien or encumbrance; (iv) any and all renewals and extensions of any such lien or encumbrance; (v) any restrictive covenant; and (vi) the rights of any owners' association affecting the Premises.

**23.     CASUALTY LOSS OR CONDEMNATION:**  Section 92.054, Property Code governs the rights and obligations of the parties regarding a casualty loss to the Premises. Any proceeds, payment for damages, settlements, awards, or other sums paid because of a casualty loss to the Premises will be Landlord's sole property. For the purpose of this lease, any condemnation of all or a part of the Premises is a casualty loss.

**24.     SPECIAL PROVISIONS: (Do not insert a lease-option or lease-purchase clause without the assistance of legal counsel. Special obligations and liabilities under statute apply to such transactions.)**

25.    **DEFAULT:**

   A.  If Landlord fails to comply with this lease, Tenant may seek any relief provided by law.  Landlord urges Tenant to review Chapter 92 of the Property Code, which deals with residential tenancies.

   B.  If Tenant fails to timely pay all amounts due under this lease or otherwise fails to comply with this lease, Tenant will be in default and:

     (1) Landlord may terminate Tenant's right to occupy the Premises by providing Tenant with at least ___30___ day(s) written notice to vacate;

     (2) all unpaid rents which are payable during the remainder of this lease or any renewal period will be accelerated without notice or demand;

     (3) Landlord may exercise Landlord's lien under Paragraph 21 and any other rights under this Lease or the Property Code; and

     (4) Tenant will be liable for:

       (a) any lost rent;

       (b) Landlord's cost of re-letting the Premises including but not limited to all fees and charges, necessary to re-let;

       (c) repairs to the Premises for use beyond normal wear and tear;

       (d) all Landlord's costs associated with eviction of Tenant, including but not limited to attorney's fees, court costs, costs of service, witness fees, and prejudgment interest;

       (e) all Landlord's costs associated with collection of amounts due under this Lease, including but not limited to collection fees, late charges, and returned check charges; and

       (f) any other recovery to which Landlord may be entitled by law.

   C.  Notice to vacate under Paragraph 25B(1) may be by any means permitted by §24.005, Property Code.

   D.  Landlord and Tenant each have a duty to mitigate damages.

26.    **EARLY TERMINATION:**  The term of the Lease begins on the Commencement Date and ends on the Expiration date unless: (i) renewed under Paragraph 4; (ii) extended by written agreement of the parties; or (iii) terminated earlier under Paragraph 25, by agreement of the parties, applicable law, or this Paragraph 26.

   A.  <u>Military, Family Violence, Sexual Offenses</u>: Tenants may have special statutory rights to terminate the Lease early in certain situations involving family violence, sexual offenses or a military deployment or transfer.

     (1) <u>Military</u>:  If Tenant is or becomes a servicemember or a dependent of a servicemember, Tenant

may terminate this lease by delivering to Landlord a written notice of termination and a copy of an appropriate government document providing evidence of: (a) entrance into military service; (b) military orders for a permanent change of station (PCS); or (c) military orders to deploy with a military unit for not less than 90 days.  Termination is effective on the 30th day after the first date on which the next rental payment is due after the date on which the notice is delivered.  Section 92.017 Property Code governs the rights and obligations of the parties under this paragraph.

(2) **Family Violence:**  Tenant may terminate this lease if Tenant obtains and provides Landlord with a copy of a court order described under §92.016, Property Code protecting Tenant or an occupant from family violence committed by a cotenant or occupant of the Premises.    Section 92.016, Property Code governs the rights and obligations of the parties under this Paragraph.

(3) **Sex Offenses:**  If this Lease is executed after January 1, 2010, Tenant may terminate this lease if Tenant is a victim of sexual assault or a parent or guardian of a victim of sexual assault under Section 22.011, Penal Code, aggravated sexual assault under Section 22.021, Penal Code, or continuous sexual abuse of a child under Section 21.02, Penal Code, that takes place during the preceding six-month period on the Premises or at any dwelling on the Premises.  Section 92.0161, Property Code, governs the rights and obligations of the parties under this paragraph.

B. **Assignment and Subletting:**

(1) Tenant may not assign this lease or sublet the Premises without Landlord's written consent.

(2) If Tenant requests an early termination of this lease under this Paragraph 26B, Tenant may attempt to find a replacement tenant and may request Landlord to do the same.  Landlord may, but is not obligated to, attempt to find a replacement tenant.

(3) Any assignee, subtenant, or replacement tenant must, in Landlord's discretion, be acceptable as a tenant and must sign: (a) a new lease with terms not less favorable to Landlord than this Lease or otherwise acceptable to Landlord; (b) a sublease with terms approved by Landlord; or (c) an assignment of this lease in a form approved by Landlord.

(4) At the time Landlord agrees to permit an assignee, subtenant, or replacement tenant to occupy the Premises, Tenant will pay Landlord:

(a) if Tenant obtains the assignee, subtenant, or replacement tenant:

☐ (i) $ _NA_____

☐ (ii) _____% of one's month rent that the assignee, subtenant, or replacement tenant is to pay.

(b) if Landlord procures the assignee, subtenant, or replacement tenant:

☐ (i) $ _NA_____

☐ (ii) _____% of one's month rent that the assignee, subtenant, or replacement tenant is to pay.

(5) Unless expressly stated otherwise in an assignment or sublease, Tenant will not be released from Tenant's obligations under this Leaes because of an assignment or sublease.  An assignment of this lease or a sublease of this lease without Landlord's written consent is voidable by Landlord.

27. **ATTORNEY'S FEES:** Any person who is a prevailing party in any legal proceeding brought under or related to this Lease is entitled to recover prejudgment interest, attorney's fees, costs of service, and all

Tenant ____ __ __ __        Landlord ____
CJM 186253v.6

other costs of the legal proceeding from the non-prevailing party.

**28. ADDENDA:** Incorporated into this Lease are the following addenda, exhibits and other information. If Landlord's Rules and Regulations are made part of this Lease, Tenant agrees to comply with the Rules and Regulations as Landlord may, at Landlord's discretion, amend from time to time.

- ☐ Addendum Regarding Lead-Based Paint
- ☐ Inventory & Condition Form
- ☐ Landlord's Additional Parking Rules
- ☐ Pet Agreement
- ☐ Protecting Your Home from Mold
- ☐ Agreement for Application Deposit & Hold
- ☐ Insurance

- ☐ Agreement Between Brokers
- ☐ Landlord's Rules & Regulations
- ☐ Owners' Association Rules
- ☐ Pool/Spa Maintenance Addendum
- ☐ Residential Lease Application
- ☐ Residential Lease Guaranty
- ☐ _____

**29. REPRESENTATIONS:** Tenant's statements in this lease and any application for rental are material representations.  Each party to this lease represents that he or she is of legal age to enter into a contract.  If Tenant makes a misrepresentation in this lease or in an application for rental, Tenant is in default.

**30. NOTICES:** All notices under this Lease must be in writing and are effective when hand-delivered, sent by mail, or sent by electronic transmission to: (Do not insert an e-mail address or a fax number unless the party consents to receive notices under this Lease at the e-mail address or fax number specified.

Tenant at the Premises and a copy to:
E-mail: _Cmlinton4@gmail_
Fax: _____

Landlord c/o:
E-mail _dan@dougwitt.com_
Fax: _____

**31. MISCELLANEOUS:**  Any statutory reference in this Lease, or any reference to "Property Code" in this Lease, refers to the Texas Property Code.

**32. AGREEMENT OF PARTIES:**

A. <u>Entire Agreement</u>:  There are no oral agreements between Landlord and Tenant.  This Lease contains the entire agreement between Landlord and Tenant and may not be changed except by written agreement.

B. <u>Binding Effect</u>: This Lease is binding upon and inures to the benefit of the parties to this Lease and their respective heirs, executors, administrators, successors, and permitted assigns.

C. <u>Joint and Several</u>: All Tenants are jointly and individually liable for all provisions of this Lease. Any act or notice to, refund to, or signature of, any one or more of the Tenants regarding any provision of this lease, its extension, its renewal, or its termination is binding on all Tenants executing this Lease.

D. <u>Waiver</u>:  Any delay, waiver, or non-enforcement of a rental due date or any other right by Landlord  will not be deemed to be a waiver of any other breach by Tenant or any other right in this Lease.

E. <u>Severable Clauses</u>:   Should a court find any clause in this Lease unenforceable, the remainder of this Lease will not be affected and all other provisions in this Lease will remain enforceable.

F. <u>Controlling Law</u>: The laws of the State of Texas govern the interpretation, validity, performance, and enforcement of this Lease.

Tenant _CL_ ___ ___ ___
CJM 186253v.6

Landlord _DW_ _____

**33.** **INFORMATION:**

**A.** Inquires about this lease, rental payments, and security deposits should be directed to the person listed for receipt of notices for Landlord under Paragraph 30.

**B.** Unpaid rent and any unpaid amount under this lease are reportable to credit reporting agencies.

**C.** Landlord is not obligated to respond to any requests for Tenant's rental and payment history from a mortgage company or other prospective landlord until Tenant has given notice of termination of this lease and Tenant is not in breach of this lease.   (Notice: Landlord or Landlord's agent may charge a reasonable fee for processing such information.)

**D.** If all occupants over 18 years of age die during this Lease, Landlord may: (i) permit the person named below to access the Premises at reasonable times in Landlord's or Landlord's agent's presence; (ii) permit the named person to remove Tenant's personal property; and (iii) refund the security deposit, less deductions, to the named person.  Section 92.014, Property Code governs procedures to follow in the event of a tenant's death.

Name: Kemayu Linton
Address: 2103 Long Forest Rd  Heartland            Phone: 469 975 6551
E-mail: Kemaya Ray Linton @ gmail

**E.** The Texas Department of Public Safety maintains a database that the public may search, at no cost, to determine if registered sex offenders are located in certain areas (see www.txdps.state.tx.us under online services).  For information concerning past criminal activity in certain areas, contact the local police department.

**F.** Landlord's broker,
  □ will □ will not act as the property manager for landlord.

**G.** This Lease is negotiable between the parties. This Lease is binding upon final acceptance.  **READ IT CAREFULLY.** If you do not understand the effect of this Lease, consult your attorney BEFORE signing.

| | | | |
|---|---|---|---|
| **Landlord** _DWH_ | **Date** 3/5/25 | **Tenant1** _signature_ | **Date** 2/27/25 |

Or signed for Landlord under written property
Management agreement or power of attorney

By:_____
                    Date

Printed Name:_____

Firm Name:_____

Tenant 2 _____
                              Date

Tenant 3 _____
                              Date

Tenant  LL  ___  ___  ___            Landlord  _DW_                     Page 16 of 16
CJM 186253v.6

# PET AGREEMENT

This Pet Agreement is entered into this **29** day of **FEBRUARY**, 20 **25**, by and Between: **DOUG WITT** ( Landlord), and **COURTNEY LINTON** (Residents), residing in the Premises located at. **2103 LONG FOREST RD HEARTLAND TX 75126**

In consideration of their mutual promises, Landlord and Residents agree as follows:

**a. Description of Pet:** The Lease covering the Premises provides that no pets are permitted on or about the Premises without Landlord's prior written consent. Residents are hereby permitted to have only the following described Pet, subject to the terms and conditions of this Pet Agreement:

Name of Pet: **Pig, Pickle, Venom**  Type of animal: **Cat**

Breed: **Short hair**  Color: **two grey tabby, one black/white**

Age: **1**  Weight: _____  License #: _____

Date of last rabies shot: **10/24**  City of license: _____

Name of Pet owner: **Courtney Linton**

No other animal (including any offspring) shall be permitted by Residents in the Premises at any time.

**b. Residents agree to abide by the following rules:**

**1- Nuisance.** The Pet may not cause any damage to the premises. Nor may the Pet cause any discomfort, annoyance, or nuisance to any other resident.

**2- Sanitary Problems.** All dogs and cats must be housebroken. The Pet may not be fed or given water, or allowed to urinate or defecate, on any unprotected carpet inside the dwelling unit. Residents shall immediately remove and properly dispose of all Pet waste on the grounds.

**3- Prohibited Areas.** The Pet shall not be permitted in the laundry room, pool area clubhouse, or other recreational facility.

**4- Abandonment.** Residents may not abandon the Pet, leave it for any extended period without food or water, or fail to care for it if it is sick.

**5- Compliance with Laws.** Residents agree to comply with all applicable governmental laws and regulations.

### Landlord's remedies for violations

**1- Removal of Pet by Residents.** If, in Landlord's sole judgment, any rule or provision of this Pet Agreement is violated by Residents or their guests, Residents shall immediately and permanently remove the Pet from the premises upon written notice from Landlord.

**2- Removal of Pet by Property Landlord.** If, in Landlord's sole judgment, Residents have abandoned the Pet, left it for any extended period without food or water, failed to care for it if it is sick, or left it unattended in violation of the rules herein, then Landlord may, upon one day's prior written notice left in a conspicuous place, and in accordance with the terms of the Lease dealing with entry of the Premises, enter the dwelling unit to remove the Pet, and turn the Pet over to a humane society or local authority. Landlord shall not be liable for loss, harm, sickness, or death of the Pet unless due to Landlord's negligence. Landlord has no lien on the Pet for any purposes, but Residents shall pay for reasonable care and kenneling charges if the Pet is removed in accordance with this paragraph.

**3- Cleaning and repairs.** Residents shall be jointly and severally liable for the entire amount of all damages caused by the Pet. If any item cannot be satisfactorily cleaned or repaired, Residents must pay for complete replacement of such item.

**4- Injuries.** Residents shall be strictly liable for the entire amount of any injury to any person or property caused by the Pet, and shall indemnify Landlord for all costs of litigation and attorney's fees resulting from same.

**5- Move-out.** After Residents vacate the Premises, they shall reimburse Landlord for the cost of de-fleeing, deodorizing, and shampooing necessary to protect future residents from possible health hazards.

**6- Other remedies.** This Pet Agreement is an Addendum to the Lease Agreement between Landlord and Residents. If any rule or provision of this Pet Agreement is violated, Landlord shall in addition to the foregoing, have all rights and remedies set forth in the Lease Agreement for violations thereof, including but not limited to eviction, damages, costs and attorney's fees.

Tenant: _____    Date: 2/27/25

Tenant: _____    Date: _____

Landlord: _____    Date: 3/5/25

This sample agreement form is based on a compilation from the Texas Apartment Association and the Rental Property Owners Association of Grand Rapids, MI

# Exhibit "B"

| Payment Ledger for 2103 Long Forest Rd. Heartland, TX 75126 | | | | |
|---|---|---|---|---|
| Renter: Courtney M. Linton | | | | |
| Date | Description | Credit | Debit | Balance |
| 6/1/2025 | Rent Due | $0.00 | $2,200.00 | $2,200.00 |
| 7/1/2025 | Rent Due | $0.00 | $2,200.00 | $4,400.00 |
| 8/1/2025 | Rent Due | $0.00 | $2,200.00 | $6,600.00 |
| 9/1/2025 | Rent Due | $0.00 | $2,200.00 | $8,800.00 |
| 10/1/2025 | Rent Due | $0.00 | $2,200.00 | $11,000.00 |
| | **TOTAL** | | | **$11,000.00** |
| | **Per Diem (31 Days) = $70.96** | | | |

**Exhibit "C"**



CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed October 10, 2025**

_____
**United States Bankruptcy Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

In Re:                                                        Case No. 25-33152-SGJ-13
COURTNEY MICHELLE LINTON
            Debtor

---

**Order Dismissing Chapter 13 Case pursuant to General Order 2023-04**

---

On representation of the Standing Chapter 13 Trustee evidenced by the signature below that the Debtor failed to timely pay the Trustee the first payment specified in Debtor plan within 30 days after filing of the petition date ;

 **IT IS, THEREFORE ORDERED**, that the above proceeding be and hereby is in all things **DISMISSED without prejudice** PROVIDED that if, within 14 days of entry hereof, a creditor in this case files a motion to amend this order and seeks a dismissal with prejudice, sanctions or other relief deemed appropriate by the Court, this Order may be amended by the Court, after notice and a hearing, to grant the relief sought in said motion in whole or in part.

 **IT IS FURTHER ORDERED** that all debts due and owing creditors as of this date are NOT DISCHARGED or affected in any manner by this Order.

Order Dismissing Chapter 13 Case Pursuant to General Order 2023-04, Page 2
25-33152-SGJ-13
COURTNEY MICHELLE LINTON

**IT IS FURTHER ORDERED** that the above styled and numbered case will be closed twenty one days after the entry of this order provided that this is a single debtor case or a joint debtor case and both debtors are dismissed.

### ### End of Order ###

Signed:     /s/ Thomas D. Powers
_____
            Chapter 13 Trustee

Office of the Standing Chapter 13 Trustee
5601 Executive Dr.
Suite 300
Irving, TX  75038
(214) 855-9200 / (214) 965-0756  (Fax)